# EXHIBIT 6

# 5300 CODE OF CONDUCT

## CROTON-HARMON UFSD CODE OF CONDUCT—ADOPTED AS REVISED—JUNE 16, 2022

## I. Introduction

The District's Code of Conduct is based on the District's commitment to a Culture of Respect—one in which empathy, diversity and respect for all is valued and practiced. All members of the school community are urged to embrace this commitment, and the District shall take all appropriate actions to realize this commitment.

In this regard, the Board is committed to providing a safe and orderly school environment where students may receive and District personnel may deliver quality educational services without disruption or interference. Essentially, this means that relationships are such that students can learn and teachers can teach. Responsible behavior by students, teachers, other District personnel, parents and other visitors is essential to achieving this goal.

This commitment is consistent with the District's mission, vision and core values—to provide an excellent learning environment and the dedicated development of every student's generosity of spirit, passion for learning, and ultimate success. The vision is educating students to become ethical decision-makers, self-directed learners, complex thinkers, collaborative workers, quality producers, and community contributors.

The District has a long-standing set of expectations for conduct on school property and at school functions. These expectations are based on the principles of civility, mutual respect, citizenship, character, tolerance, honesty and integrity.

Appropriate conduct and strong character are reflected in a civil, respectful, healthy and caring environment.

The Board is also committed to protecting First Amendment freedoms within the school system. However, inappropriate or illegal conduct will not be tolerated. The District will not permit students to engage in any conduct intended to destroy personal or school property; to disrupt or interfere with teaching, research, service, administrative functions; or to disrupt or interfere with any District-sponsored or approved activity.

The Board recognizes the need to clearly define these expectations for acceptable conduct on school property, to identify the possible consequences of unacceptable conduct, and to ensure that discipline when necessary is administered promptly and fairly. To this end, the Board adopts this Code of Conduct.

Unless otherwise indicated, this code applies to all students, school personnel, parents and other visitors when on school property or attending a school function.

All policies regarding student conduct and discipline shall be uniformly applied and enforced.

With the input of administrators, faculty, staff, and parents, and (as appropriate) students at each school, a summary of the District Code of Conduct, addressing subjects relevant to the students of that school and stated in language appropriate to the students, shall be adopted. The summary shall be distributed annually to students, faculty, and staff of the school and shall be mailed or otherwise transmitted to parents/guardians of the students in the school. The District Code of Conduct, and the summary of the Code of Conduct for each school, shall be made available to teachers, staff members, parents/guardians, students, and other community members, through the District website and additional means as appropriate.

5300

While there are formal disciplinary procedures in place, it is critical that parents and educators realize the importance of communication and positive relationships in resolving discipline issues. The formal discipline process is often unnecessary when parents, educators, and students have an opportunity to develop cooperative partnerships. Collaborative discussions of this type often lead to creative and student-specific solutions that support appropriate behavior and educational achievement. Student discipline and support policies and practices will be implemented in a manner which is caring and equitable, respectful and based on trust among administration, staff, students, and families and holds all individuals accountable, but is restorative and solutions oriented, rather than solely punitive. This will help students:

- learn from their mistakes;
- understand why their behavior was unacceptable;
- acknowledge the harm they caused or the negative impact of their actions;
- understand what they could have done differently;
- take responsibility for their actions;
- learn pro-social strategies and skills to use in the future; and
- understand that further consequences and/ or interventions will be implemented if their unacceptable behavior persists.

If parents or school officials believe that a student's placement is not appropriate, they should work together to recommend an appropriate change. Collaborative and cooperative partnerships between parents, educators, and students are more likely to result in a change that will meet the needs of the student, ensure improved learning opportunities, and create a safe environment.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, June 14, 2018, June 16, 2022

## II. Definitions

For purposes of this code, the following definitions apply:

"*Behavior*" is the way in which one acts or conducts oneself, especially towards others. It is expected that students, staff, and visitors will conduct themselves in such a way that is in line with this Code of Conduct.

"*Bullying*" means intentional and aggressive behavior that involves an imbalance of power or strength and is usually repeated over time. Traditionally, bullying has involved actions such as hitting or punching (physical bullying); teasing or name-calling (verbal bullying); or intimidation through gestures or social exclusion.

"*Cyberbullying*" (also known as "*electronic bullying*") means the repeated use of information technology such as the Internet, email, instant messaging services, blogs, cell phones and gaming systems to deliberately harass, threaten or intimidate others. Cyberbullying may also involve sending mean, vulgar or threatening messages or images; posting sensitive or private information about another person; pretending to be someone else in order to malign that person; or intentionally excluding someone from an Internet-based group or activity.

"*Disruptive student*" means an elementary or secondary student under the age of 21 who is substantially disruptive of the educational process or substantially interferes with the teacher's authority over the classroom.

5300

"*Drug Related Paraphernalia*" means objects or materials designed to facilitate the taking, imbibing, injecting, inhaling or sale of illicit or illegal drugs or substances.

"*Gender*" means actual or perceived sex and shall include a person's gender identity or expression.

"*Gender expression*" means the manner in which a person represents or expresses gender to others, often through behavior, clothing, hairstyle, activities, voice or mannerisms.

"*Gender identity*" means one's self-conception as being male or female, as distinguished from actual biological sex or sex assigned at birth.

"*Harassment*" means the creation of a hostile environment by conduct or by verbal threats, intimidation or abuse that has or would have the effect of unreasonably and substantially interfering with a student's educational performance, opportunities or benefits, or mental, emotional or physical well-being; or conduct, verbal threats, intimidation or abuse that reasonably causes or would reasonably be expected to cause a student to fear for their physical safety; such conduct, verbal threats, intimidation or abuse includes but is not limited to conduct, verbal threats, intimidation or abuse based on a person's actual or perceived race, color, weight, national origin, ethnic group, religion, religions practice, disability, sexual orientation, gender identity, gender expression, gender or sex.

"*Parent*" means parent, guardian or person in parental relation to a student.

"*Protective hairstyles*" includes, but is not limited to, such hairstyles as braids, locks ('locs"), and twists.

"*Race*" includes traits historically associated with race, including, but not limited to, hair texture and protective hairstyles.

"*Relationship*s" are the way in which two or more people regard and behave toward each other.

"*Removal*" means the act of a teacher in discontinuing the presence of a student in their classroom.

"*Respect*" is an act of treating everyone in the school community with dignity. This is demonstrated by: treating others with kindness and care, being polite and using manners, expressing thoughts in opinions in ways that are polite and courteous, using a polite tone of voice and body language, listening to others who are speaking to you, keeping one's hands to one's self and not violating others' personal space.

"*Responsibility*" is an obligation to behave in accordance with social norms and being held accountable for one's actions.

"*Restorative Practices*" are a response to student actions that violate the dignity, safety, or well-being of others by connecting the person responsible for the harm with those who have been harmed, in order to reach a resolution that guides, and assists the person responsible for the harm in accepting responsibility, apologizing for the harm, making meaningful reparation and improving the relationship between parties.

"*School property*" means in or within any building, structure, athletic playing field, playground, parking lot or land contained within the real property boundary line of a public elementary or secondary school, or in or on a school bus, as defined in Vehicle and Traffic Law §142.

5300

"*School function*" means any school-sponsored trip, or extra-curricular or co-curricular event or activity.

"*Sexting*" means the sending, receiving or forwarding of sexually provocative nude or nearly nude photographs through text messages or email which can be used to hurt, harass and humiliate others.

"*Sexual orientation*" means actual or perceived heterosexuality, homosexuality, or bisexuality.

"*Violent student*" means a student under the age of 21 who:

1. Commits an act of violence upon a school employee, or attempts to do so.
2. Commits, while on school property or at a school function, an act of violence upon another student or any other person lawfully on school property or at the school function, or attempts to do so.
3. Possesses, while on school property or at a school function, a weapon.
4. Displays, while on school property or at a school function, what appears to be or is a weapon.
5. Threatens, while on school property or at a school function, to use a weapon.
6. Knowingly and intentionally damages or destroys the personal property of any school employee or any person lawfully on school property or at a school function.
7. Knowingly and intentionally damages or destroys school District property or the personal property of any school employee or any person lawfully on school property or at a school function.
8. Damages property or harms another person as a result of reckless behavior.

"*Weapon*" means a firearm as defined in federal law for purposes of the Gun-Free Schools Act. It also means any other gun, BB gun, pistol, revolver, shotgun, rifle, machine gun, disguised gun, paintball gun, pocket knife, dagger, dirk, razor, stiletto, switchblade knife, laser pointer, gravity knife, brass knuckles, sling shot, metal knuckle knife, box cutter, cane sword, electronic dart gun, Kung Fu star, electronic stun gun, pepper spray or other noxious spray, corrosive substance, explosive or incendiary bomb, or other device, instrument, material or substance that can cause physical injury or death when used to cause physical injury or death. An exception may be made by prior written permission of the principal where a weapon is to be part of a dramatic or musical performance or is to be used as an artifact in an instructional unit. As a prerequisite to such permission, all such weapons shall be rendered inoperative to the extent necessary to avoid and avert possible accidents or injury due to any use, handling, or misconduct, whether intentional or otherwise. This policy shall not preclude the use of certain corrosive materials or sharp instruments by staff or medical personnel in the course of duty.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, August 22, 2016, June 16, 2022

## III. Student Rights and Responsibilities

### A. Student Rights

The District is committed to safeguarding the rights given to all students under state and federal law and district policy. In addition, to promote a safe, healthy, orderly and supportive school environment, all District students have the right to:

5300

1. Take part in all District activities on an equal basis regardless of the student's actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, creed, national origin, ethnic group, weight, religion, religious practice, sex, gender, sexual orientation, gender identity, gender expression, or disability, or any other status protected by law or policy.

2. Learn in an environment that is free from harassment of any kind, whether in the form of sexual harassment or harassment based on a student's actual or perceived race, color, ethnicity, disability, religion, national origin, sex, gender, sexual orientation, gender identity, gender expression, or any other category prohibited by law or of an unlawful nature.

3. To be respected as an individual and treated fairly and with dignity by other students and school staff.

4. To express one's opinions, either verbally or in writing, as long as it is done so in a respectful manner.

5. Present their version of the relevant events to school personnel authorized to impose a disciplinary penalty in connection with the imposition of the penalty.

6. Access school policies, regulations, and rules and, when necessary, receive an explanation of those rules from school personnel.

7. Due process, as defined by applicable law and policy.

8. To be provided with clear expectations regarding:
    a. Course objectives, requirements and state standards;
    b. Grading criteria and procedures;
    c. Assignment requirements and deadlines; and
    d. School and classroom rules and expectations regarding behavior.

## B. Student Responsibilities

All District students have the responsibility to:

1. Contribute to maintaining a safe, supportive and orderly school environment that is conducive to learning and to show respect to other persons and to property.

2. Help make school a community free of violence, intimidation, bullying, harassment, and discrimination

3. Be familiar with and abide by all District policies, rules and regulations dealing with student conduct.

4. Attend school every day unless they are legally excused and be in class, on time, and prepared to learn, and complete assignments when due.

5. Work to the best of their ability in all academic and extracurricular pursuits and strive toward their highest level of achievement possible.

6. React to direction given by teachers, administrators and other school personnel in a respectful, positive manner.

7. Work to develop the social behaviors necessary to interact with others in a positive manner.

8. Ask questions when they do not understand.

9. Seek help in solving problems.

10. Dress appropriately for school and school functions.

11. Accept responsibility for their actions.

12. Conduct themselves as representatives of the District when participating in or attending

school-sponsored extracurricular events and to hold themselves to the highest standards of conduct, demeanor, and sportsmanship.

13. Students may find themselves in the unique situation of possessing information that could be potentially dangerous to themselves or others. They should report any and all situations or suspicions about harmful acts to other students, to their teachers, or to other school personnel. All suspicions should be immediately reported. The identities of students who report such situations or suspicions will be kept confidential by school authorities until legally required to do otherwise.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, August 22, 2016, June 14, 2018, June 16, 2022

## IV. Essential Partners

A critical component of all codes of conduct is the shared beliefs of all stakeholders. Implementation without belief will be unsuccessful. Understanding, support, participation and belief of all members of the school community are needed for successful implementation of this code of conduct.

### A. Parents

A cooperative relationship between home and school is essential for each student's successful development and achievement. Research indicates that significant parental involvement in the education of their children leads to higher academic achievement, increased self-esteem, and fewer behavior problems. To achieve this wholesome relationship, parents are encouraged to:

1. Recognize that the education of their child(ren) is a joint responsibility of the parents and the school community and collaborate with the district to optimize their child's educational opportunities.
2. Send their children to school ready to participate and learn.
3. Ensure students bring only items appropriate and related to instructional programs to school.
4. Ensure their children attend school regularly and on time.
5. Ensure that absences are excused and provide a written explanation for each absence to school authorities.
6. Insist their children be dressed and groomed in a manner consistent with the student dress code.
7. Help their children understand that in a democratic society appropriate rules are required to maintain a safe, orderly environment.
8. Know school and classroom rules and help their children understand them.
9. Convey an enthusiastic and supportive attitude toward school and education.
10. Build positive, constructive relationships with school officials, teachers, other parents and their children's friends.
11. Recognize that teachers merit the same consideration and respect parents expect from their child.
12. Cooperate with the school in jointly resolving any school-related problems.
13. Help their children deal effectively with peer pressure.
14. Listen to the views and observations of all parties concerned.
15. Inform school officials of changes in the home situation that may affect student conduct or

5300

performance.

16. Provide a place for study and ensure homework assignments are completed.
17. Encourage their children's participation in extracurricular activities.
18. Set an example of good sportsmanship at athletic events, and an example of good citizenship.
19. Promote participation in restorative practices to resolve incidents and conflict and to support their child in receiving the maximum benefit from a restorative justice approach

Parents should be aware that they are responsible for any financial obligations incurred by their child in school, including but not limited to lost books, damage to property, etc.

## B. Teachers

Every teacher knows that s/he works every day with this nation's future generation. Teacher skill and preparation, combined with higher expectations for student achievement and effective communication with home, are known to contribute to student success. In view of this responsibility, each teacher must:

1. Lead by example in adhering to the code of conduct.
2. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender identity, gender expression, gender or sex, which will strengthen students' self-esteem and promote confidence to learn.
3. Be prepared to teach.
4. Plan and conduct instruction that will make learning challenging and stimulating.
5. Demonstrate interest in teaching and concern for student achievement.
6. Communicate to students and parents:
   a. Course objectives and requirements
   b. Marking/grading procedures
   c. Assignment deadlines
   d. Expectations for students
   e. Classroom discipline plan.
7. Communicate regularly with students, parents and other teachers concerning growth and achievement.
8. As appropriate, provide information to assist students with career planning and college planning.
9. Encourage students to benefit from the curriculum and extracurricular programs
10. Manage classroom procedures.
11. Organize the classroom physical space - for safety and accessibility.
12. Know the support services available to students and refer students who are in need of such services.
13. Read, understand and comply with a student's individualized education plan, §504 plan, or behavior improvement plan.
14. Know school policies and rules, and enforce them in a fair and consistent manner.
15. Demonstrate effective and appropriate management of student behavior.

5300

16. Recognize that some disciplinary problems may be caused by a student's personal and/or academic frustration.

17. Distinguish between minor student misconduct best handled by the teacher and major problems requiring assistance of an administrator.

18. Handle individual infractions privately and avoid punishing the group for the misbehavior of one or two.

19. Identify changing student behavior patterns and notify appropriate personnel.

20. Report to the Principal or Assistant Principal any student who jeopardizes their own safety, the safety of others or of the teacher, or who seriously interferes with the instructional program of the classroom.

21. Comply with state education law and Board policy regarding corporal punishment and mandated reporting of child abuse in the domestic setting or educational setting.

22. In the event of removal from class, inform the student and the Principal of the reason for the removal.

23. Immediately report and refer violent students to the Principal or the Superintendent of Schools.

24. Initiate teacher/student/counselor conferences and parent/teacher/student/counselor conferences, as necessary, as a way to resolve problems.

25. Participate in school-wide efforts to provide adequate supervision in all school spaces.

26. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee or any person who is lawfully on school property or at a school function.

27. Address personal biases that may prevent equal treatment of all students in the school or classroom setting.

28. Be open to active participation in resolving conflicts through a restorative process.

## C. Other School Staff (including pupil services staff, coaches, advisors, clerical staff, lunch aides, building and grounds personnel, and security personnel)

1. Lead by example in adhering to the code of conduct.

2. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender identity, gender expression, gender or sex, which will strengthen students' self-esteem and promote confidence to learn.

3. Maintain confidentiality in accordance with federal and state law.

4. Be familiar with the code of conduct.

5. Know school policies and rules, and enforce them in a fair and consistent manner.

6. Participate in school-wide efforts to provide adequate supervision in all school space.

7. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

8. Address personal biases that may prevent equal treatment of all students.

9. Promote a safe and orderly school environment.

10. Follow District policies and procedures.

11. Be open to active participation in resolving conflicts through a restorative process.

5300

## D. Bus Drivers

1. Maintain the highest degree of driving safety.
2. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender identity, gender expression, gender or sex.
3. Require proper behavior of students.
4. Load and unload students correctly.
5. Learn and practice defensive driving techniques.
6. Obey all applicable state and federal laws, rules and regulations.
7. Help children understand the district's expectations for maintaining a safe, orderly environment.
8. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.
9. Address personal biases that may prevent equal treatment of all students.
10. Follow District policies and procedures.

## E. School Counselors (including guidance counselors, psychologists, student assistance counselors, social workers) and student health service providers

1. Lead by example in adhering to the code of conduct.
2. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender identity, gender expression, gender or sex, which will strengthen students' self-esteem and promote confidence to learn.
3. Assist students in coping with peer pressure and emerging personal, social and emotional problems.
4. Provide support for students in coping with peer pressure and personal, social and emotional problems.
5. Provide assessment of students to determine whether a student is a danger to himself/herself or others, with a referral for a psychiatric evaluation when deemed necessary.
6. Provide recommendations for appropriate interventions, provide follow-up, and maintain contact with student, staff, parents and outside agencies, as needed.
7. Initiate teacher/student/counselor conferences and parent/teacher/student/ counselor conferences, as necessary, as a way to resolve problems.
8. Regularly review with students their educational progress and career plans.
9. Provide information to assist students with career planning.
10. Encourage students to benefit from the curriculum and extracurricular programs.
11. Maintain confidentiality in accordance with federal and state law.
12. Inform students and families of available community resources to meet their needs.
13. Participate in school-wide efforts to provide adequate supervision in all school spaces.

5300

14. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee or any person who is lawfully on school property or at a school function.

15. Address personal biases that may prevent equal treatment of all students in the school or classroom setting.

16. Be open to active participation in resolving conflicts through a restorative process.

## F. Building Administrators (Principals and Assistant Principals)

1. Lead by example in adhering to the code of conduct.

2. Demonstrate leadership qualities that set a positive example for students and staff.

3. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender identity, gender expression, gender or sex, which will strengthen students' self-esteem and promote confidence to learn.

4. Promote a safe, orderly and stimulating school environment, supporting active teaching and learning.

5. Develop procedures that reduce the likelihood of student misconduct.

6. Establish necessary building security.

7. Ensure that all disciplinary cases referred are resolved promptly; that students are provided with fair, reasonable and consistent discipline; and that laws and Board policies governing hearings, suspensions, and student rights are adhered to.

8. Ensure that students and staff have the opportunity to communicate regularly with the building administrator and approach the building administrator for redress of grievances.

9. Evaluate on a regular basis all instructional programs, including to ensure infusion of civility education in the curriculum.

10. Support the development of and student participation in appropriate co-curricular activities.

11. Be responsible for enforcing the code of conduct within the designated parameters and ensuring that all cases are resolved promptly and fairly.

12. Encourage parental participation in their children's education.

13. Maintain confidentiality in accordance with federal and state law.

14. Participate in school-wide efforts to provide adequate supervision in all school spaces.

15. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee or any person who is lawfully on school property or at a school function.

16. Address personal biases that may prevent equal treatment of all students in the school or classroom setting.

17. Be open to active participation in resolving conflicts through a restorative process.

## G. Bullying Prevention Coordinator(s)

1. Promote a safe, orderly and stimulating school environment, supporting active teaching and learning for all students regardless of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, weight, national origin, ethnic group, religion, religious practice,

5300

disability, sexual orientation, gender identity, gender expression, gender or sex.

2. Oversee and coordinate the work of the district-wide and building-level bullying prevention committees.

3. Identify curricular resources that support infusing civility in classroom instruction and classroom management; and provide guidance to staff as to how to access and implement those resources.

4. Coordinate, with the Professional Development Committee, training in support of the bullying prevention committee.

5. Be responsible for monitoring and reporting on the effectiveness of the district's bullying prevention policy.

6. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

7. Address personal biases that may prevent equal treatment of all students and staff.

8. Be open to active participation in resolving conflicts through a restorative process.

## H. Superintendent and Other Central Office Administrators

1. Lead by example in adhering to the code of conduct.

2. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender identity, gender expression, gender or sex, which will strengthen students' self-concept and promote confidence to learn.

3. Promote a safe, orderly and stimulating school environment, supporting active teaching and learning.

4. Review with District administrators the policies of the Board of education and state and federal laws relating to school operations and management.

5. Inform the Board about educational trends relating to student discipline.

6. Work to create instructional programs that minimize problems of misconduct and are sensitive to student and teacher needs.

7. Work with District administrators in enforcing the code of conduct and ensuring that all cases are resolved promptly and fairly.

8. Demonstrate a willingness to communicate with parents on behavioral and educational issues concerning their students that parents have not resolved with teachers or building administrators.

9. Demonstrate a willingness to communicate meaningfully with students about their concerns and issues.

10. Maintain confidentiality in accordance with federal and state law.

11. Participate in school-wide efforts to provide adequate supervision in all school spaces.

12. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee or any person who is lawfully on school property or at a school function.

13. Address personal biases that may prevent equal treatment of all students in the school or classroom setting.

14. Be open to active participation in resolving conflicts through a restorative process.

5300

### I. Board of Education

1. Lead by example in adhering to the Code of Conduct and in conducting Board meetings in a professional, respectful, courteous manner.

2. Maintain a climate of mutual respect and dignity for all students regardless of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender identity, gender expression, gender or sex, which will strengthen students' self-esteem and promote confidence to learn.

3. Collaborate with student, teacher, administrator, and parent organizations, school safety personnel and other school personnel to develop a code of conduct that clearly defines expectations for the conduct of students, District personnel and visitors on school property and at school functions.

4. Adopt and review at least annually the District's code of conduct to evaluate the code's effectiveness and the fairness and consistency of its implementation.

5. Maintain confidentiality in accordance with federal and state law.

6. Develop and recommend a budget that provides programs and activities that support achievement of the goals of the code of conduct.

7. Lead by example by conducting Board meetings in a professional, respectful, and courteous manner.

8. Address issues of harassment or any situation that threatens the emotional or physical health or safety of any student, school employee, or any person who is lawfully on school property or at a school function.

9. Address personal biases that may prevent equal treatment of all students and staff.

10. Support professional development for the Board and all staff, providing a safe school environment, encouraging the forming of trusting relationships with students, allowing for student choice and autonomy, and encouraging student skill-building and competence.

11. Be open to active participation in resolving conflicts through a restorative process.

### J. Conduct of Visitors

In an effort to maintain a safe and healthy educational environment, all visitors to the schools of the District must sign in at the office or the Welcome Center in the lobby of the building being visited and must receive and display a visitor's identification badge. Visitors are expected to comport themselves in a manner that does not disrupt the academic process and to act in accordance with the law and this District Code of Conduct.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, August 22, 2016, June 16, 2022

### V. Student Dress Code

The following are guidelines for appropriate dress for school and school functions, which may vary according to the function or event, and may differ from school to school within the district as determined by the building principal in the manner described below. Individual students and parents have the responsibility for student dress and general appearance. Student attire (including dress, grooming and appearance, hair, jewelry, make-up and nails) and personal cleanliness should be in good taste and appropriate for the business of learning. Teachers and all other District personnel should exemplify in their own attire and presentation and reinforce to students expectations for

5300

acceptable student dress and attire and help students develop an understanding of appropriate appearance in the school setting. The student dress code shall not be applied in a disparate or discriminatory manner with regard to a student's actual or perceived race, color, creed, national origin, ethnic group, religion, religious practice, sex, gender identity or expression, sexual orientation, weight or disability, or any other status protected by law.

Students are required to attend school in appropriate dress that meets health and safety standards and does not interfere with the educational process. Students may be asked to wear appropriate protective gear in certain classes (e.g. home and careers classes, science laboratory classes, physical education classes).

The principal of each school building in the district shall be responsible for establishing the specific dress code for that building, in consultation with teachers, parents, and (as appropriate) students; the individual school dress code shall be subject to the approval of the Superintendent of Schools. Each individual school dress code must, at a minimum, incorporate the restrictions stated in this section of the Code of Conduct, which include:

- Students may not wear extremely brief, revealing or see-through garments, or garments that expose underwear.
- Students must wear footwear at all times. Footwear that is a safety hazard will not be allowed.
- Hats, other head coverings, and coats may be worn in the hallways. Students may not wear clothing that covers the student's face to the extent that the student is not identifiable, except for a medical or religious reason. Unless otherwise prohibited or restricted in an individual school dress code, hats, other head coverings, and coats may be worn in the classroom; however, individual teachers may direct students to remove hats, sunglasses, bandanas, hoods, or other head coverings (other than those worn for a religious or medical reason) or coats in the classroom.
- Students shall not wear clothing or items that display messages that (i) are sexually explicit or display sexual acts, bodily functions, or nudity or that denigrate others individually or on account of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, religion, creed, national origin, gender identity, gender expression, gender or sex, sexual orientation, weight, or disability; (ii) promote, encourage or endorse acts of violence or membership in groups that promote, encourage or endorse acts of violence; (iii) glorify or promote illegal or controlled substance, alcohol, or tobacco use, or illegal activities, and/or is otherwise materially disruptive to the learning environment; or (iv) denote or represent gang affiliation such as bandanas, beads, jewelry or other indicators and/or symbols intended expressly to do so.

Nothing in this policy will be construed to limit the ability of students to express their gender identity through clothing, jewelry, makeup, or nail color or styles, or to discipline students for doing so. Likewise, nothing in this policy will be construed to restrict students from wearing hairstyles as a trait historically associated with race (such as hair texture and protective hairstyles like braids, locs, and twists) or to discipline them for doing so.

At the beginning of the school year, each building principal or their designee shall be responsible for informing all students, in an age appropriate manner, and their parent(s) of the individual school dress code and thereafter of any revisions to the dress code made during the school year.

Enforcement of this dress code must be approached with careful consideration and sensitivity, with the goal of supporting students in reaching their full potential, not shaming or criminalizing them, and to minimize loss of instructional time. Staff, preferably those who have a positive relationship with the student, are expected to address dress code violations with students privately, determine if there are

5300

factors impacting the student's ability to meet the dress code, and help address these issues.

If a student is found wearing attire that is not in conformity with the district Student Dress Code or with the individual school dress code, the student will be required to change clothes and/or remove or replace the non-conforming item prior to returning to class or being allowed to continue to participate in any school-related activity. Any student who repeatedly fails to comply with the district or individual school dress code or who refuses to comply with an instruction to change clothes or remove a non-conforming item shall be considered to have engaged in prohibited student conduct and shall be subject to appropriate consequences under this Code of Conduct.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, August 22, 2016, June 16, 2022

## VI. Prohibited Student Conduct

The Board of Education expects all students to conduct themselves in an appropriate and civil manner, with proper regard for the rights and welfare of other students, District personnel and other members of the school community, and for the care of school facilities and equipment.

The best discipline is self-imposed, and students must learn to assume and accept responsibility for their own behavior, as well as the consequences of their misbehavior. District personnel who interact with students are expected to use disciplinary action only when necessary and to place emphasis on educating students so that they may grow in self-discipline.

The Board recognizes the need to make its expectations for student conduct while on school property or engaged in a school function specific and clear. The rules of conduct listed below are intended to do that and focus on safety and respect for the rights and property of others. Students who will not accept responsibility for their own behavior and who violate these school rules will be required to accept the consequences for their conduct.

Students may be subject to disciplinary action, up to and including suspension from school, when they:

**A. Engage in conduct that is disorderly**. Examples of disorderly conduct include, but are not limited to:

1. Running in hallways.
2. Making unreasonable noise.
3. Using language or gestures that are profane, lewd, vulgar or abusive.
4. Obstructing vehicular or pedestrian traffic, or reckless driving.
5. Engaging in any willful act which disrupts the normal operation of the school community.
6. Trespassing - Students are not permitted in any school building, other than the one they regularly attend, without permission from the administrator in charge of the building.
7. Trespassing - Students are not permitted to be in any unauthorized area of any school building without permission from the administrator in charge of the building.
8. Trespassing - Students are not permitted on school property beyond the hours designated by property signage except as authorized by school personnel.
9. Computer/electronic communications misuse, including any unauthorized use of computers, software, or internet/intranet account; accessing inappropriate web sites; or any other violation of the District's acceptable use policy.
10. Computer/electronic communications misuse off-campus includes using such means of

5300

communication to threaten, harass, or annoy school personnel and/or other students, sending "hate mail" or creating messages or documents of a threatening or inflammatory nature.

**B. Engage in conduct that is insubordinate**. Examples of insubordinate conduct include:

1. Failing to comply with the reasonable directions of teachers, school administrators or other school employees in charge of students or otherwise demonstrating disrespect.
2. Lateness for, missing or leaving school without permission.
3. Skipping detention.

**C. Engage in conduct that is disruptive**. Examples of disruptive conduct include:

1. Failing to comply with the reasonable directions of teachers, school administrators or other school personnel in charge of students.
2. Interrupting or interfering with the orderly conduct of classes, school programs or school activities.

**D. Engage in conduct that is violent**. Examples of violent conduct include:

1. Committing or threatening an act of violence (such as hitting, kicking, pushing, shoving, wrestling, punching, spitting and scratching) upon a teacher, administrator or other school employee or attempting to do so.
2. Committing or threatening an act of violence (such as hitting, kicking, punching, spitting and scratching) upon another student or any other person lawfully on school property or attempting to do so.
3. Possessing a weapon. Authorized law enforcement officials are the only persons permitted to have a weapon in their possession while on school property or at a school function.
4. Displaying what appears to be a weapon.
5. Threatening to use any weapon.
6. Intentionally damaging or destroying the personal property of a student, teacher, administrator, other District employee or any person lawfully on school property.
7. Intentionally damaging or destroying school District property, including graffiti or arson.

**E. Engage in conduct that is destructive**. Examples of such conduct include:

1. Acts of vandalism on school property or the personal possessions of school personnel and/or other students (including defacing, damaging or destroying property).
2. Graffiti or graffiti "art" on school property.

**F. Engage in any conduct that endangers the safety, morals, health or welfare of others**. Examples of such conduct include but are not limited to:

1. Lying to school personnel.
2. Stealing or attempting to steal the property of other students, school personnel or any other person lawfully on school property or attending a school function.
3. Defamation, which includes making false or unprivileged statements or representations about an individual or identifiable group of individuals that harm the reputation of the person or the identifiable group by demeaning them.

5300

4.  Discrimination, which includes the use of a person's actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, creed, national origin, ethnic group, religion, religious practice, sex, gender identity or expression, sexual orientation, weight or disability as a basis for treating another in a negative manner, or to deny rights, equitable treatment or access to facilities available to others.

5.  Harassment, which includes a sufficiently severe action or a persistent, pervasive pattern of actions or statements directed at an identifiable individual or group which are intended to be or which a reasonable person would perceive as hostile, ridiculing or demeaning (including unwanted sexual advances); this includes sexual harassment, gender-based harassment, or harassment based on a person's actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, creed, national origin, ethnic group, religion, religious practice, sex, gender identity or expression, sexual orientation, weight or disability, or any other status protected by law.

6.  Sexual misconduct, which includes sexually inappropriate conduct, sexual exploitation, sexual assault, and any other conduct of a sexual nature that is nonconsensual, age-inappropriate, or has the effect of threatening, intimidating, or coercing a person, committed against a student, a school employee, or any other person lawfully on school property or attending a school function.

7.  Bullying, including cyberbullying, and harassment, sexual or otherwise, which involves a sufficiently severe action or a persistent, pervasive pattern of actions or statements directed at an identifiable individual or group which are intended to be, or which a reasonable person would perceive as, hostile, ridiculing or demeaning.

8.  Intimidation, which includes engaging in actions or statements that put an individual in fear of bodily harm.

9.  Hazing, which includes any intentional or reckless act directed against another for the purpose of initiation into, affiliating with or maintaining membership in any school sponsored activity, organization, club or team.

10. Selling, using, displaying or possessing obscene material, including but not limited to the sending or receiving of sexually explicit messages or photographs, primarily between mobile phones or other electronic devices.

11. Using vulgar or abusive language or gestures, cursing or swearing.

12. Smoking, consuming, selling, offering, manufacturing, distributing or exchanging a cigarette, cigar, pipe or using an electronic cigarette (e-cigarette) or similar device including but not limited to e-hookahs, hookah pens and vape pens, or chewing or smokeless tobacco, or smoking/vaping/ingesting/consuming cannabis or concentrated cannabis (includes cannabis products) or smoking cannabinoid hemp or selling, offering, manufacturing, distributing or exchanging cannabis, concentrated cannabis or cannabinoid hemp (except for lawful medical cannabis use prescribed by a medical care provider in compliance with state law and regulation and district policy on administration of medication on school premises or while engaged in school activities).

13. Possessing, remaining in the presence of, consuming, selling, offering, manufacturing, distributing or exchanging alcoholic beverages or illegal substances, or being under the influence of either. "Illegal substances" include, but are not limited to, inhalants, cocaine, LSD, PCP, amphetamines, heroin, steroids and other performance enhancing substances, look-alike drugs, and any synthetic version thereof, whether specifically illegal or not, commonly referred to as "designer drugs,", being substances designed and synthesized to mimic the intended effects and usages of, or which are chemically substantially similar to, illegal drugs, which may or may not be labeled for human

consumption.

14. Possessing drug related paraphernalia.

15. Inappropriately using, selling, or sharing prescription and over-the-counter drugs, or any other substance for the purpose of altering the student's physical or mental state (e.g. "huffing" or "sniffing" of aerosols).

16. Using, and/or displaying any radio, walkman-style tape, CD, or DVD player, audio and/or video recorder, laptop computer or tablet device (including an iPad), external speaker, pager, digital music player, cell phone (including, but not limited to, talking, text messaging, message playing, ring-tone playing, game playing, music playing, audio recording, picture taking and video taking), electronic game, e-book reader, or other electronic device in any manner that interferes with instruction, that is prohibited by the individual school code of conduct, or that continues after the student has been directed by an administrator, teacher, or other district employee to cease using or displaying such device Notwithstanding the previous sentence, such devices may be used, with prior permission of the school authorities, in connection with teaching, learning, or research or for assistive purposes in accordance with an Individualized Educational Program ("IEP") or a Section 504 plan, or the equivalent. In addition,

    ○ Electronic games with age-appropriate software are permitted to be used by K-12 students on District transportation.

    ○ No recording, broadcasting, and/or playback equipment or materials, including but not limited to video recorders, cameras, cell phone cameras, tape recorders, or videophones, are permitted to be used in school, on school grounds, and/or at school events without prior teacher or administrator approval. Exception: possessing or using such devices at an athletic, recreational, or entertainment event or performance open to the public is permitted, when the sole use is to record the event for non-commercial purposes. In no circumstance may the device be used to embarrass or invade the privacy of any person, or to interfere with property rights, or to record or transmit confidential information. Such use includes, but is not limited to, the uploading, on-line posting, texting, and/or any other form of sharing of such content with one or more individuals, through any current or future method, medium or technology. In the event that such prohibited equipment is used or is used in a way that is prohibited, a teacher or any other member of the staff will see that it the recording equipment, including content if applicable, is turned in to the main office and kept there until the end of the day. Repeated incidents, or possession of recording equipment containing inappropriate content, will require a parent conference in order to retrieve the confiscated items, and may be subject the student to consequences under this Code of Conduct. The District reserves the right to confiscate and retain equipment that is reasonably suspected of having been used to record, to receive and/or to transmit visual or auditory content that might be a violation of law, for review and determination by law enforcement officials.

17. Using skateboards, roller skates, in-line skates, scooters or other similar items recreationally in school or on school grounds. In the interest of personal and traffic safety, using these items is prohibited in school and on school grounds at all times. In the event that such prohibited items are used, a teacher or any other member of the staff will see that the items are turned in to the main office and kept there until the end of the day. Repeated incidents will require a parent conference in order to retrieve the confiscated items.

18. Gambling.

19. Engaging in lewd behavior or inappropriate displays of affection.

20. Indecent exposure, that is, exposure to sight of the private parts of the body.

5300

21. Initiating a report warning of fire or other catastrophe without valid cause, misuse of 911, or discharging a fire extinguisher.
22. Knowingly making false statements or knowingly submitting false information to school staff during a disciplinary process or investigation.
23. Subjecting other students, school personnel or any other person lawfully on school property or attending a school function to danger by recklessly engaging in conduct which creates a substantial risk of physical injury.

**G. Engage in misconduct while on a school bus.** It is crucial for students to behave appropriately while riding on District buses to ensure their safety and that of other passengers and to avoid distracting the bus driver. Students are required to conduct themselves on the bus in a manner consistent with established standards for classroom behavior. Excessive noise, pushing, shoving and fighting will not be tolerated.

**H. Engage in any form of academic misconduct.** Examples of academic misconduct include:

1. Plagiarism.
2. Cheating.
3. Copying.
4. Altering records.
5. Computer or electronic communications misuse.
6. Assisting another student in any of the above actions.

**I. Engage in off-campus conduct** that endangers the health and safety of students or staff within the school or substantially disrupts education, or adversely affects the educative process, or can reasonably be expected to have such a consequence.  Off-campus conduct shall be covered by the Code of Conduct if there is a nexus or relationship between the conduct at issue and the district. Examples of such misconduct include, but are not limited to, harassment, bullying and cyberbullying; threatening or harassing students or staff through electronic means; or using electronic means to convey threats, derogatory or violent comments or images, or posting pornographic pictures of students or school personnel (sexting).

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, August 22, 2016, June 14, 2018, June 16, 2022

## VII. Reporting Violations

Conversations and comments (including on-line communications) that mention or imply the threat of physical harm to an individual or a group should be immediately reported to an appropriate adult, i.e. a parent and/or a teacher and, ultimately, to a school official. It is important that students, parents, and staff understand that any threat of violence, even one seemingly made jokingly or in a casual manner, is a cause for concern and will be treated seriously by school authorities.

In addition, all students are expected to promptly report other violations of the code of conduct to a teacher, guidance counselor, the assistant principal, the building principal or their designee. Any student observing a student possessing a weapon, alcohol or illegal substance on school property or at a school function shall report this information immediately to a teacher, the assistant principal, the building principal, the principal's designee or the Superintendent.

All District staff who are authorized to impose disciplinary sanctions are expected to do so in a

5300

prompt, fair and lawful manner. District staff who are not authorized to impose disciplinary sanctions are expected to promptly report violations of the code of conduct to their supervisor, who shall in turn impose an appropriate disciplinary sanction, if so authorized, or refer the matter to a staff member who is authorized to impose an appropriate sanction.

Any weapon, tobacco product, drug related paraphernalia, alcohol, cannabis, or illegal substance found shall be confiscated immediately, if possible, followed by notification to the parent of the student involved and the appropriate disciplinary sanction if warranted, which may include permanent suspension and referral for prosecution.

Notification of these types of code violations will be communicated to the building staff on a need-to-know basis, in consideration of the confidentiality rights of the student who violated the code of conduct.

The District will report to law enforcement authorities any (1) acts of violence that constitute a felony or misdemeanor, or (2) threatened acts of violence. The District may report to law enforcement authorities other violations of the District Code of Conduct which constitute a felony or misdemeanor. The report shall be made as soon as practicable.  The notification must identify the student and explain the conduct that violated the code of conduct and constituted a crime.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, June 16, 2022

## VIII. Disciplinary Interventions, Consequences, Procedures, and Referrals

Historically, the discipline of students in schools has focused mainly on handing out punishments based on specific actions. These punishments include reprimands, loss of privileges, office referrals, detentions and suspensions.

However, understanding discipline as a "teachable moment" is fundamental to a positive approach to discipline with the ultimate goal of teaching pro-social behavior. Therefore, the board authorizes restorative practices to be employed where appropriate, use conflict resolution, restitution to those harmed, and group, classroom, community and re-entry circles to address misbehaviors with the ultimate goal of teaching pro-social behavior. This approach seeks concurrent accountability and behavioral change.

The main principles of restorative justice are valuing and restoring relationships, repairing the harm done to affected parties, respecting others' opinions, and reintegrating into the school community.

Under this model, we ask:

- Who has been hurt?
- What are their needs?
- Whose obligations are these?

Essential to the implementation of restorative practices is helping students who have engaged in unacceptable behavior to:

- Understand why the behavior is unacceptable and the harm it caused;
- Understand what could have been done differently in the same situation;
- Take responsibility for their actions;
- Make reparations and or restitution to repair the harm done;

5300

- Be given the opportunity to learn pro-social strategies/skills to use in the future; and
- Understand the progression of more increasingly punitive consequences may be imposed if the behavior reoccurs.

While there may be more traditional punishments in conjunction with teaching behavior expectations and treating disciplinary matters as teachable moments, this is a more effective approach than merely reacting to specific events unless student behaviors pose an immediate or ongoing threat to the safety of other students and staff.

The Board directs staff and administration to utilize restorative practices where appropriate in addressing student disciplinary issues.

In the application of restorative practices, the process is always voluntary for the students. Any parent (or student over the age of 18) can request to go to the traditional disciplinary route and not participate in the restorative process. This may happen at any time during the process, or if a student is unwilling to accept responsibility for their actions and is not demonstrating willingness to make amends.

When addressing student behaviors that may impede learning, school personnel should consider a range of positive supports, strategies, and interventions described in this section before removals and suspensions. Discipline policies, practices, and behavioral intervention plans should include a variety of interventions. These may include addressing a student's motivation, social skills, and problem-solving abilities, and using positive reinforcement and logical consequences.

Discipline is most effective when it deals directly with the problem at the time and place it occurs, and in a way that students view as fair and impartial. School personnel who interact with students are expected to use disciplinary action only when necessary and to place emphasis on the students' ability to grow in self-discipline.

Disciplinary action, when necessary, will be firm, fair and consistent so as to be the most effective in changing student behavior. In determining the appropriate disciplinary action, school personnel authorized to impose disciplinary penalties will consider the following:

1. The student's age.
2. The nature of the offense and the circumstances which led to the offense.
3. The student's prior disciplinary record.
4. The effectiveness of other forms of discipline.
5. Information from parents, teachers and/or others, as appropriate.
6. Other extenuating circumstances.

As a general rule, depending on the circumstances and the nature of the conduct, discipline will be progressive. This means that a student's first violation will usually merit a lesser consequence than subsequent violations; however, out of school suspension may be the initial consequence depending on the conduct or as may be provided elsewhere in this policy.

It is also the Board's desire that staff members imposing a consequence for prohibited student conduct take into account all relevant factors in determining the appropriate consequence to be imposed and to seek the consequence that is both appropriate to the circumstances while still preserving the quality of the student's education to the greatest extent possible. The consequences set forth below may be imposed either alone or in combination.

If the conduct of a student is related to a disability or suspected disability under IDEA, Article 89, and the Part 200 Regulations, copies of which are available by contacting the Director of Special

5300

Education, the student shall be referred to the Committee on Special Education. Discipline, if warranted, shall be administered consistent with the separate requirements of this code of conduct for disciplining students with a disability or presumed to have a disability. A student identified as having a disability shall not be disciplined for behavior related to their disability. The relationship between the disciplinary infraction and the disability shall require a determination by the Committee on Special Education.

**A. Interventions**

Students who are found to have violated the District's code of conduct may be subject to the following interventions, either alone or in combination. These interventions are not necessarily listed in sequential order. The school personnel identified after each intervention are authorized to provide or arrange for the provision of that intervention.

1. Positive alternatives, such as: - any member of the District staff

   a) student motivation

   b) social skills

   c) problem-solving skills

   d) positive reinforcements

   e) logical consequences

   f) anger management

   g) conflict resolution, and

   h) behavior management techniques

2. Team therapeutic intervention - social worker, guidance counselor, school psychologist
3. Utilization of appropriate temporary settings - any member of the District staff

**B. Consequences**

If a parent or student age 18 or older opts out of participating in the restorative practices or if restorative practices have not been effective with the student in question, if the student's alleged conduct is not amenable to resolution through restorative practices, or if disciplinary consequences are mandated by law, the list below will be utilized to determine consequences. Students who are found to have violated the District's code of conduct may be subject to the following consequences, either alone or in combination. The school personnel identified after each consequence are authorized to impose that consequence, consistent with the student's right to due process. Administrators seeking to address a particular code infraction with a penalty that is outside the range of consequences designated for that infraction must first consult with the Superintendent of schools to review the unique and/or extenuating circumstances that might justify such a deviation.

1. Oral warning - any member of the District staff
2. Written warning - teachers, assistant principal, principal, assistant superintendent, Superintendent
3. Referral to building administrator - bus drivers, hall and lunch monitors, coaches, guidance counselors, teachers

5300

4. Notification of parent - coaches, guidance counselors, teachers, assistant principal, principal, assistant superintendent, Superintendent

5. Detention - teachers, assistant principal, principal, assistant superintendent, Superintendent

6. Suspension from transportation - assistant principal, principal, Director of Pupil Personnel Services, assistant superintendent, Superintendent

7. Suspension from athletic participation - assistant principal, principal, Athletic Director, assistant superintendent, Superintendent

8. Suspension from social or extracurricular activities - assistant principal, principal, assistant superintendent, Superintendent

9. Suspension of other privileges - assistant principal, principal, assistant superintendent, Superintendent

10. In-school suspension - principal, assistant superintendent, Superintendent

11. Removal from classroom by teacher - teacher

12. Short-term (five days or less) suspension from school, which includes suspension from athletic participation and from social or extracurricular activities - principal, Superintendent, Board of Education, consistent with Education Law §3214 and §2801.

13. Long-term (more than five days) suspension from school, which includes suspension from athletic participation and from social or extracurricular activities - Superintendent, Board of Education

14. Permanent suspension from school - Superintendent, Board of Education.

15. An appropriate alternative to disciplinary or corrective action offered to the student in lieu of a consequence listed above - assistant principal, principal, assistant superintendent, Superintendent

If appropriate, law enforcement agencies will be notified and/or involved in the situation.

Counseling, although not considered discipline, may be an alternative to the imposition of disciplinary consequences, provide that such counseling is provided by an appropriate staff member, such as a guidance counselor or school psychologist.

## C. Procedures

The type of due process a student is entitled to receive before a consequence is imposed depends on the consequence being imposed. In all cases, regardless of the consequence imposed, the school personnel authorized to impose the consequence must inform the student of the alleged misconduct and must investigate, to the extent necessary, the facts surrounding the alleged misconduct. All students will have an opportunity to present their version of the facts to the school personnel imposing the disciplinary consequence in connection with the imposition of the penalty.

Students who are to be given consequences other than an oral warning, written warning, referral to building administrator, or written notification to their parents are entitled to additional rights before the penalty is imposed. These additional rights are explained below.

1. Detention

   Teachers, an assistant principal, principals, assistant superintendent, and the Superintendent may use detention as a consequence for student misconduct in situations where removal from the classroom or suspension would be inappropriate.

The student will be provided 24 hours to arrange transportation from school after an after-school detention.

2. Suspension from transportation

If a student does not conduct himself/herself properly on a bus, the bus driver is expected to bring such misconduct to the attention of the building principal or assistant principal and/or the Supervisor of Transportation. Students who become a serious disciplinary problem may have their riding privileges suspended by the building principal, assistant principal, Director of Pupil Personnel Services, assistant superintendent, or Superintendent. In such cases, the student's parent will become responsible for seeing that their child gets to and from school safely. Should the suspension from transportation amount to a suspension from attendance, the District will make appropriate arrangements to provide for the student's education. This section does not limit the authority of the Superintendent, building principal or their designees from imposing other disciplinary measures as deemed appropriate.

A student subjected to a suspension from transportation is not entitled to a full hearing pursuant to Education Law §3214. However, the student and the student's parent will be provided with a reasonable opportunity to be heard by the individual imposing the suspension to discuss the conduct and the penalty involved.

3. Suspension from athletic participation, extra-curricular activities and other privileges

A student subjected to a suspension from athletic participation, extra-curricular activities or other privileges is not entitled to a full hearing pursuant to Education Law §3214. However, the student and the student's parent will be provided with a reasonable opportunity to be heard at a meeting with the District official imposing the suspension the purpose of which is to review the conduct and the penalty involved. In addition, student athletes are expected to comply with the standards of conduct set forth in the Croton-Harmon Athletic Handbook. Consequences for violations of provisions of the Athletic Handbook may be imposed as set forth in the Athletic Handbook.

4. In-school suspension

The Board recognizes that the school must balance the need of students to attend school and the need for order in the classroom to establish an environment conducive to learning. As such, the Board authorizes building principals and the Superintendent to place students who would otherwise be suspended from school as the result of a code of conduct violation in "in-school suspension." The in-school suspension is an alternative to out-of-school suspension. Students who commit suspendable offenses (such as truancy, excessive class cutting, excessive tardiness, disruptive behavior) may be assigned to an in-school suspension where they will receive appropriate academic work to complete and may be provided with the opportunity for counseling in an effort to rectify their disruptive behavior.

A student subjected to an in-school suspension is not entitled to a full hearing pursuant to Education Law §3214. However, the student and the student's parent will be provided with a reasonable opportunity for an informal conference with the District official imposing the in-school suspension to discuss the conduct and the penalty involved.

5. Teacher disciplinary removal of disruptive students

A student's behavior can affect a teacher's ability to teach and can make it difficult for other

5300

students in the classroom to learn. In most instances the classroom teacher can control a student's behavior and maintain or restore control over the classroom by using good classroom management techniques. These techniques may include defusion, de-escalation, and redirection.

After the classroom teacher has exhausted these and other appropriate interventions, the teacher may need to direct a student to leave the classroom briefly to give the student an opportunity to regain their composure and self-control in an alternative setting. Such practices may include, but are not limited to: (1) short-term "time out" in an elementary classroom or in an administrator's office; (2) sending a student into the hallway briefly; (3) sending a student to the principal's office for the remainder of the class time only; or (4) sending a student to a guidance counselor or other District staff member for counseling. These classroom management techniques do not constitute disciplinary removals for purposes of this code.

On occasion, a student's behavior may become disruptive in class. For purposes of this code of conduct, a disruptive student is a student who is substantially disruptive of the educational process or substantially interferes with the teacher's authority over the classroom. A substantial disruption of the educational process or substantial interference with a teacher's authority occurs when a student demonstrates a persistent unwillingness to comply with the teacher's instructions or repeatedly violates the teacher's classroom behavior rules.

A classroom teacher may remove a disruptive student from class for up to two days. The removal from class applies to the class of the removing teacher only.

If the teacher finds that the student's continued presence in the classroom does not pose a continuing danger to persons and property and does not present an ongoing threat of disruption to the academic process, the teacher shall, prior to removing the student from the classroom, provide the student with an explanation of the basis for the removal and allow the student to informally present their version of the relevant events. In all other cases, the teacher shall provide the student with an explanation of the basis for the removal and an informal opportunity to be heard within twenty-four hours after the student's removal.

If the student poses a danger or ongoing threat of disruption, the teacher may order the student to be removed immediately. The teacher must, however, explain to the student why they were removed from the classroom and give the student a chance to present their version of the relevant events within 24-hours.

The teacher must complete a District-established disciplinary referral form and meet with the principal or their designee as soon as possible, but no later than the end of the school day, to explain the circumstances of the removal and to present the referral form. If the principal or designee is not available by the end of the same school day, the teacher must leave the form with the principal's secretary and meet with the principal or designee prior to the beginning of classes on the next school day.

Within 24 hours after the student's removal, the principal or another District administrator designated by the principal must notify the student's parents, by telephone and letter, that the student has been removal from class and the reasons for the removal. The notice must also inform the parent(s) that they have the right, upon request, to meet informally with the principal or the principal's designee to discuss the reasons for the removal. The written notice must be provided by personal delivery, express mail delivery, or some other means, to the last known address of the parent, which is reasonably calculated to ensure receipt

5300

within 24 hours of the removal.

If the parent, upon notification by the authorized administrator, requests an informal conference, the teacher who ordered the removal may be required to be present at the informal conference. If the student has an IEP or a Section 504 Plan, the chairperson of the Committee for Special Education must also be present at the conference.

If at the informal meeting the student denies the charges, the principal or the principal's designee must explain why the student was removed and give the student and the student's parents a chance to present the student's version of the relevant events. The informal meeting must be held within 48 hours of the student's removal. The timing of the informal meeting may be extended by mutual agreement of the parent and principal.

The principal may overturn the removal of the student from class if the principal finds any one of the following:

1. The charges against the student are not supported by substantial evidence.
2. The student's removal is otherwise in violation of law, including the District's code of conduct.
3. The conduct warrants suspension from school pursuant to Education Law §3214 and a suspension will be imposed.

The principal may overturn a removal at any point between receiving the referral form issued by the teacher and the close of business on the day following the 48-hour period for the informal conference, if a conference is requested. No student removed from the classroom by the classroom teacher will be permitted to return to the classroom until the principal makes a final determination, or the period of removal expires, whichever is less.

Any disruptive student removed from the classroom by the classroom teacher shall be offered continued educational programming and activities until they are permitted to return to the classroom. In the event of teacher removal of a disruptive student in accordance with the code of conduct, continued educational programming will be provided as soon as practicable.

Removal of a student with a disability, under certain circumstances, may constitute a change in the student's placement. Accordingly, no teacher may remove a student with a disability from their class until he or she has verified with the principal and the chairperson of the Committee on Special Education that the removal will not constitute a change in placement (i.e. that such removal, together with other discipline previously imposed, will not result in suspensions or other removals accumulating to more than 10 school days or would otherwise violate federal or state laws or regulations on discipline of a student with an IEP or a Section 504 plan).

6. Suspension from school

Suspensions will be limited to students who pose an immediate or ongoing threat to oneself or others or are repeatedly substantially disruptive, for whom restorative practices have not been effective, who have declined to participate in restorative practices, who have not participated in restorative practices in good faith, or whose conduct is of such severity that, in the Building Principal's determination, restorative practices are not appropriate.

Suspension from school is a severe penalty, which may be imposed only upon students

who are insubordinate, seriously disorderly, violent or disruptive, or whose conduct otherwise endangers the safety, morals, health or welfare of others. A student suspended from a BOCES vocational program is automatically suspended from the home school, and a student suspended from the home school is automatically suspended from the BOCES vocational program.

Where appropriate, alternative remedial measures should be considered before suspension is necessitated. These measures may include: counseling by teachers, guidance personnel, child study teams or administrators; teacher removal; in-school suspension; suspension from cocurricular, extracurricular and/or athletic programs; parent conferences and alternative programming.  Any long-term suspensions from a student's regular school setting should be appropriate to the circumstances of the offense and with due regard for the student's educational program and to the health and safety of others on school property.

Where alternative measures are provided and the student and/or parent does not cooperate, or student behavior continues to be unacceptable, suspension may become unavoidable. Suspension is also appropriate, without the use of alternative measures, for serious misbehavior or misconduct. In all cases of suspension, immediate steps should be taken to ensure that alternative instruction is provided within a reasonable time as and to the extent provided in the Code of Conduct.

The Board retains its authority to suspend students, but places primary responsibility for the suspension of students with the Superintendent and the building principals.

Students who participate in restorative practices ending in a restorative conference and written agreement may be permitted to return to school sooner than those who do not. Early return is entirely at the discretion of the district.

Any staff member may recommend to the Superintendent or the principal that a student be suspended. All staff members must immediately report and refer a violent student to the principal or the Superintendent for a violation of the Code of Conduct. All recommendations and referrals shall be made in writing unless the conditions underlying the recommendation or referral warrant immediate attention. In such cases a written report is to be prepared as soon as possible by the staff member recommending the suspension.

The Superintendent or principal or designated "Acting Principal", upon receiving a recommendation or referral for suspension or when processing a case for suspension, shall gather the facts relevant to the matter and record them for subsequent presentation, if necessary.

### a. Short-term (5 days or less) suspension from school

The Superintendent and/or principal or designated "Acting Principal" shall have the power to suspend a student for a period not to exceed five (5) school days. When the Superintendent or principal or designated "Acting Principal" (referred to as the "suspending authority") proposes to suspend a student charged with misconduct for five days or less pursuant to Education Law §3214(3), the suspending authority must immediately notify the student orally. If the student denies the misconduct, the suspending authority must provide an explanation of the basis for the proposed suspension. The suspending authority must also notify the parent in writing that the student may be suspended from school. The written notice must be provided by

5300

personal delivery, express mail delivery, or some other means that is reasonably calculated to assure receipt of the notice within 24 hours of the decision to propose suspension at the last known address for the parents. Where possible, notice should also be provided by telephone if the school has been provided with a telephone number(s) for the purpose of contacting the parents.

The written notice shall provide a description of the offending behavior and the charges against the student and the incident for which suspension is proposed and shall inform the parents of the right to request an immediate informal conference with the principal in accordance with Education Law §3214(3)(d). If the suspension is imposed by the building principal, the principal shall immediately notify the Superintendent of this action.

The informal conference, if requested, must be scheduled, excluding days on which school is closed, within twenty-four hours of the notice by telephone or by mail (if no telephone notice can be provided), unless the principal is requested by the parent to delay the conference and grants the request, during which delay the suspension may be enacted.

Both the notice and informal conference shall be in the dominant language or mode of communication used by the parents. At the conference, the parents shall be permitted to ask questions of complaining witnesses under such procedures as the principal may establish.

The notice and opportunity for an informal conference shall take place before the student is suspended unless the student's presence in school poses a continuing danger to persons or property or an ongoing threat of disruption to the academic process. If the student's presence does pose such a danger or threat of disruption, the notice and opportunity for an informal conference shall take place as soon after the suspension as is reasonably practicable.

After the conference, the building principal shall promptly advise the parents in writing of their decision, at which point in time the suspension will be served, as designated by the building principal. The building principal shall advise the parents that if they are not satisfied with the decision and wish to pursue the matter, they must file a written appeal to the Superintendent within ten (10) business days, unless they can show extraordinary circumstances precluding them from doing so. The Superintendent shall issue a written decision regarding the appeal within 10 business days of receiving the appeal. If the parents are not satisfied with the Superintendent's decision, they must file a written appeal to the Board of Education with the District Clerk within 10 business days of the date of the Superintendents' decision, unless they can show extraordinary circumstances precluding them from doing so. Only final decisions of the Board may be appealed to the Commissioner of Education within 30 calendar days of the decision.

Except in the case of a student whose conduct endangers the safety, morals, health, or welfare of the student or others, the Superintendent shall have the discretion to refrain from enacting the suspension during the appeal.

After a student returns from a suspension, it is incumbent upon the school administration to see that the student receives all appropriate counseling, guidance, and support services in order to minimize the possibility of reoccurrence of the reasons for suspension.

5300

**b. Long-term (more than 5 days) suspension from school**

When the Superintendent or building principal determines that a suspension for more than five days may be warranted, the Superintendent shall give reasonable notice to the student and the student's parents of their right to a fair hearing. At the hearing the student shall be informed regarding the privilege against self-incrimination, and shall have the right to be represented by counsel, the right to question witnesses against them, the right to testify on their behalf, and the right to present witnesses and other evidence on their behalf.

The notice of hearing shall advise the student and their parent(s) of the grounds for the charges in specific enough terms to enable the student and their parent(s) to anticipate reasonably the subject content of the proposed hearing and to prepare a defense. The notice of hearing shall also indicate whether the student's anecdotal record will be considered to determine the appropriate penalty in the event the student is found to have committed the charged conduct. If the anecdotal record will be considered, the notice of hearing shall advise the parent(s) and the student that they may request an opportunity to review the content of the student's anecdotal record prior to the hearing.

The student may be allowed to remain in school prior to the hearing unless, in the judgment of the Superintendent, that student's presence in school poses a danger to their own or other's physical or emotional safety, to school District property, or to the continuation of the learning process.

The Superintendent shall personally hear and determine the proceeding or may, in their discretion, designate a hearing officer to conduct the hearing. The hearing officer shall be authorized to administer oaths and to issue subpoenas in conjunction with the proceeding before them A record of the hearing shall be maintained, but no stenographic transcript shall be required. A tape or digital recording shall be deemed a satisfactory record. If the Superintendent has designated a hearing officer, the hearing officer shall make findings of fact and recommendations as to the appropriate measure of discipline to the Superintendent. The report of the hearing officer shall be advisory only, and the Superintendent may accept all or any part thereof.

The Superintendent shall promptly inform the student and the parent, in writing, of any determinations regarding the suspension. If a student of mandatory school age is not reinstated, the school authorities shall immediately provide alternative instruction for such student. As a general rule, the District shall provide alternative instruction for a student who is not of mandatory school age if the student has demonstrated a sincere desire to complete their high school education.

An appeal of the decision of the Superintendent may be made to the Board that will make its decision based solely upon the record before it. All appeals to the Board must be in writing and submitted to the District Clerk within ten (10) business days of the date of the Superintendent's decision, unless the parent(s) can show that extraordinary circumstances precluded them from doing so. The Board may adopt in whole or in part the decision of the Superintendent. Final decisions of the Board may be appealed to the Commissioner of Education within thirty (30) days of the decision under the provisions of Education Law §310.

**c. Permanent suspension**

Permanent suspension is reserved for extraordinary circumstances such as where a student's conduct poses a life-threatening danger to the safety and well-being of other students, school personnel or any other person lawfully on school property or attending a school function.

### d. Procedure after suspension

The Board may condition a student's early return from a suspension on the student's voluntary participation in a restorative conference, reentry circles, counseling or specialized classes, such as anger management or dispute resolution. The Board retains discretion in offering this opportunity. If and when the student and/or parent agrees to this option, the terms and conditions shall be specified in writing.

## D. Minimum Periods of Suspension

1. <u>Students who bring or possess a weapon on school property</u>

   Any student, other than a student with a disability, found guilty of bringing a weapon onto school property will be subject to suspension from school for at least one calendar year. A student with a disability or suspected disability shall be reviewed in accordance with the provisions of imposition of discipline against students with disabilities.

   Before being suspended, the student will have an opportunity for a hearing pursuant to <u>Education Law §3214</u>. The Superintendent has the authority to modify the one-year suspension on a case-by-case basis. In deciding whether to modify the penalty, the Superintendent may consider the following:

   1. The student's age.
   2. The student's grade in school.
   3. The student's prior disciplinary record.
   4. The Superintendent's belief that other forms of discipline may be more effective.
   5. Input from parents, teachers and/or others.
   6. Other extenuating circumstances.

2. <u>Students who commit violent acts other than bringing or possessing a weapon on school property</u>

   Any student, other than a student with a disability, who is found to have committed a violent act, other than bringing a weapon onto school property, shall be subject to suspension from school for at least five (5) days. If the proposed penalty is the minimum five-day suspension, the student and the student's parent will be given the same notice and opportunity for an informal conference given to all students subject to a short-term suspension. If the proposed penalty exceeds the minimum five-day suspension, the student and the student's parent will be given the same notice and opportunity for a hearing given to all students subject to a long-term suspension. The Superintendent has the authority to modify the minimum five-day suspension on a case-by-case basis. In deciding whether to modify the penalty, the Superintendent may consider the same factors considered in modifying a one-year suspension for possessing a weapon.

3. <u>Students who are repeatedly substantially disruptive of the educational process or repeatedly substantially interfere with the teacher's authority over the classroom</u>

   Any student, other than a student with a disability, who repeatedly is substantially disruptive

of the educational process or substantially interferes with the teacher's authority over the classroom will be suspended from school for at least five days. For purposes of this code of conduct, "repeatedly is substantially disruptive" means engaging in conduct that results in the student being removed from the classroom by teacher(s) pursuant to Education Law § 3214(3-a) and this code on four or more occasions during a semester, or three or more occasions during a trimester. If the proposed penalty is the minimum five-day suspension, the student and the student's parent will be given the same notice and opportunity for an informal conference given to all students subject to a short-term suspension. If the proposed penalty exceeds the minimum five-day suspension, the student and the student's parent will be given the same notice and opportunity for a hearing given to all students subject to a long-term suspension. The Superintendent has the authority to modify the minimum five-day suspension on a case-by-case basis. In deciding whether to modify the penalty, the Superintendent may consider the same factors considered in modifying a one-year suspension for possessing a weapon.

A student with a disability may be suspended only in accordance with the requirements of state and federal law.

## E. Minimum Discipline for Certain Alcohol and Illegal Substance Conduct

A student will likely be subject to an out-of-school suspension, in the discretion of the district, if they are found to have been

1. possessing, remaining in the presence of, consuming, selling, offering, manufacturing, distributing or exchanging alcoholic beverages or illegal substances, or being under the influence of either, or smoking/vaping/ingesting/consuming cannabis or concentrated cannabis (includes cannabis products) or smoking cannabinoid hemp or selling, offering, manufacturing, distributing or exchanging cannabis, concentrated cannabis or cannabinoid hemp (except for lawful medical cannabis use prescribed by a medical care provider in compliance with state law and regulation and district policy on administration of medication on school premises or while engaged in school activities);
2. possessing drug related paraphernalia; or
3. inappropriately using, selling, or sharing prescription and over-the-counter drugs, or another substance for the purpose of altering the student's physical or mental state, shall be subject to the minimum consequence of an out-of-school suspension.

A student with a disability may be suspended only in accordance with the requirements of state and federal law.

## F. Referrals

1. Counseling

   The Guidance Office shall handle all referrals of students to counseling.

2. PINS Petitions

   The District may file a PINS (person in need of supervision) petition in Family Court on any student under the age of 18 who demonstrates that they require supervision and treatment by:

   a. Being habitually truant and not attending school as required by part one of Article 65 of the Education Law.

5300

b. Being ungovernable, or habitually disobedient and beyond the lawful control of the school.

c. Engaging in prostitution in violation of Penal Law §230.00 (engaging or agreeing or offering to engage in sexual conduct with another person in return for a fee); or

d. Appearing to be a sexually exploited child under Social Services Law §447-a(1)(a), (c), or (d), but the student must consent to filing the PINS petition.

For items 'a' and 'b' above, when filing the petition, the district must describe the diversion efforts it has undertaken or services provided to the student, and the grounds for concluding the allegations cannot be resolved without the petition.

3. Juvenile Delinquents and Juvenile Offenders

The Superintendent is required to refer the following students to the County Attorney for a juvenile delinquency proceeding before the Family Court:

With respect to all students under age 16, except students age 14 or 15 who qualify for juvenile offender status under the Criminal Procedure Law 1.20(42).

The Superintendent is required to refer such students to the appropriate law enforcement authorities:

All students age 16 or older, and all students age 14 or 15 who qualify for juvenile offender status under the Criminal Procedure Law §1.20(42).

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, August 22, 2016, June 16, 2022

## IX. Alternative Instruction

When a teacher removes a student of any age from class or a student of compulsory attendance age is suspended from school pursuant to Education Law §3214, the District will take immediate steps to provide alternative means of instruction for the student. The Board of Education expects students, administrators, teachers and parents to make every effort to maintain student academic progress in the event of removal or suspension, and support student re-entry to the classroom at the conclusion of the disciplinary action. In addition, the District shall provide alternative instruction for a student who is not of mandatory school age if the student has demonstrated a sincere desire to complete their high school education. In the event of teacher removal of a disruptive student in accordance with the Code of Conduct, continued educational programming will be provided as soon as practicable.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015

## X. Discipline of Students with Disabilities

The Board of Education recognizes that it may be necessary to suspend, remove or otherwise discipline students with disabilities who violate the district's student code of conduct, and/or to temporarily remove a student with disabilities from their current placement because maintaining the student in that placement is substantially likely to result in injury to the student or to others. The Board expects that this will be a sparingly used option and staff will employ conflict resolution meetings, restitution to those harmed, and group, classroom, or community circles as appropriate for a particular student. Restorative practices will be the considered first in dealing with disciplinary issues, as long as

5300

the student with disabilities is able to meaningfully participate in the process and such practices are allowable under their IEP.

The Board also recognizes that students with disabilities deemed eligible for special education services under the IDEA and Article 89 of New York's Education Law enjoy certain procedural protections that school authorities must observe when they decide to suspend or remove them. Under certain conditions those protections extend, as well, to students not currently deemed to be a student with a disability but determined to be a student presumed to have a disability for discipline purposes.

Therefore, the Board is committed to ensuring that the district follows suspension and removal procedures that are consistent with those protections. The code of conduct for students is intended to afford students with disabilities and students presumed to have a disability for discipline purposes the express rights they enjoy under applicable law and regulations.

<u>Definitions</u>

For purposes of this portion of the code of conduct, and consistent with applicable law and regulations, the following definitions will apply:

1. Behavioral intervention plan (BIP) means a plan that is based on the results of a functional behavioral assessment and that, at a minimum, includes a description of the problem behavior, global and specific hypotheses as to why the problem behavior occurs, and intervention strategies that include positive behavioral supports and services to address the behavior.
2. Controlled substance means a drug or other substance abuse identified under schedule I, II, III, IV, or V in section 202(c) of the Controlled Substances Act (21 USC § 812(c)).
3. Disciplinary change in placement means a suspension or removal from a student's current educational placement that is either:
   a. For more than 10 consecutive school days; or
   b. For a period of 10 consecutive school days or less if the student is subjected to a series of suspensions or removals that constitute a pattern because they cumulate to more than 10 school days in a school year, because the student's behavior is substantially similar to the student's behavior in previous incidents that resulted in the series of removals, and because of such additional factors as the length of each suspension or removal, the total amount of time the student has been removed and the proximity of the suspensions or removals to one another.
4. Illegal drug means a controlled substance, but does not include a controlled substance legally possessed or used under the supervision of a licensed health-care professional, or a substance that is otherwise legally possessed or used under the authority of the Controlled Substances Act or under any other provision of federal or state law.
5. Interim alternative educational setting (IAES) means a temporary educational placement, other than the student's current placement at the time the behavior precipitating the IAES placement occurred. An IAES must allow a student to continue to receive educational services that enable them to continue to participate in the general curriculum and progress toward meeting the goals set out in the student's individualized education program; as well as to receive, as appropriate, a functional behavioral assessment and behavioral intervention services and modifications designed to address the behavior violation so that it does not recur.
6. Manifestation review means a review of the relationship between the student's disability and the behavior subject to disciplinary action required when the disciplinary action results in a disciplinary change of placement, and conducted in accordance with requirements set forth later in this policy.
7. Manifestation team means a district representative knowledgeable about the student and the

5300

interpretation of information about child behavior, the parent, and relevant members of the committee on special education as determined by the parent and the district.

8. Removal means a removal of a student with a disability for disciplinary reasons from their current educational placement, other than a suspension; and a change in the placement of a student with a disability to an IAES.

9. School day means any day, including a partial day, that students are in attendance at school for instructional purposes.

10. Serious bodily injury means bodily injury which involves a substantial risk of death, extreme physical pain, protracted obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ or mental faculty.

11. Student presumed to have a disability for discipline purposes means a student who, under the conditions set forth later in this policy, the district is deemed to have had knowledge was a student with a disability before the behavior that precipitated the disciplinary action.

12. Suspension means a suspension pursuant to §3214 of New York's Education Law.

13. Weapon means the same as the term "dangerous weapon" under 18 USC §930(g)(2) which includes a weapon, device, instrument, material or substance, animate or inanimate, that is used for, or is readily capable of causing death or serious bodily injury, except a pocket knife with a blade of less than two and one-half inches in length.

<u>Authority of School Personnel to Suspend or Remove Students with Disabilities</u>

The Board, District Superintendent, Superintendent of Schools or a Building Principal with authority to suspend students under the Education Law may order the placement of a student with a disability into an IAES, another setting or suspension for a period not to exceed five consecutive school days.

The Superintendent may, directly or upon the recommendation of a designated hearing officer, order the placement of a student with a disability into an IAES, another setting or suspension for a period not to exceed ten consecutive school days inclusive of any period in which the student has been suspended or removed for the same behavior pursuant to the above paragraph, if the Superintendent determines that the student's behavior warrants the suspension.  The Superintendent also may order additional suspensions of not more than ten consecutive school days in the same school year for separate incidents of misbehavior, as long as the suspensions do not constitute a disciplinary change of placement.

In addition, the Superintendent may order the placement of a student with a disability into an IAES, another setting or suspension for a period in excess of ten consecutive school days if the manifestation team determines that the student's behavior was not a manifestation of the student's disability.  In such an instance, the Superintendent may discipline the student in the same manner and for the same duration as a non-disabled student.

Furthermore, the Superintendent may, directly or upon the recommendation of a designated hearing officer, order the placement of a student with a disability to an IAES to be determined by the committee on special education for a period of up to 45 school days if the student either:

1. Carries or possesses a weapon to or at school, on school premises or to a school function, or

2. Knowingly possesses or uses illegal drugs or sells or solicits the sale of a controlled substance while at school, on school premises or at a school function under the district's jurisdiction, or

3. Has inflicted serious bodily injury upon another person while at school, on school premises or at a school function under the district's jurisdiction.

The Superintendent may order the placement of a student with a disability to an IAES under such

5300

circumstances, whether or not the student's behavior is a manifestation of the student's disability. However, the committee on special education will determine the IAES.

Procedures for the Suspension or Removal of Students with Disabilities by School Personnel

1.  In cases involving the suspension or removal of a student with a disability for a period of five consecutive school days or less, the student's parents or persons in parental relation to the student will be notified of the suspension and given an opportunity for an informal conference in accordance with the same procedures that apply to such short term suspensions of non-disabled students.
2.  The suspension of students with disabilities for a period in excess of five school days will be subject to the same due process procedures applicable to non-disabled students, except that the student disciplinary hearing conducted by the Superintendent or a designated hearing officer will be bifurcated into a guilt phase and a penalty phase (as defined in Commissioner's regulations, 8 NYCRR § 201.9).  Upon a finding of guilt, the Superintendent or the designated hearing officer will await notification of the determination by the manifestation team as to whether the student's behavior was a manifestation of their disability.  The penalty phase of the hearing may proceed after receipt of that notification.  If the manifestation team determined that the behavior was not a manifestation of the student's disability, the student may be disciplined in the same manner as a non-disabled student, except that they will continue to receive services as set forth below.  However, if the behavior was deemed a manifestation of the student's disability, the hearing will be dismissed, unless the behavior involved concerned weapons, illegal drugs or controlled substances, or the infliction of serious bodily injury, in which case the student may still be placed in an IAES.

Limitation on Authority of School Personnel to Suspend or Remove Students with Disabilities

The imposition of a suspension or removal by authorized school personnel may not result in a disciplinary change of placement of a student with a disability that is based on a pattern of suspensions or removals as set forth above in the Definitions section of this policy, unless:

1.  The manifestation team determines that the student's behavior was not a manifestation of the student's disability, or
2.  The student is removed to an IAES for behavior involving weapons, illegal drugs or controlled substances, or the infliction of serious bodily injury as set forth above.

School personnel will consider any unique circumstances on a case-by-case basis when determining whether a disciplinary change in placement is appropriate for a student with a disability who violates the district's code of conduct.

In addition, school personnel may not suspend or remove a student with a disability in excess of the amount of time that a non-disabled student would be suspended for the same behavior.

Parental Notification of a Disciplinary Change of Placement

The district will provide the parents of a student with a disability notice of any decision to make a removal that constitutes a disciplinary change of placement because of a violation of the student code of conduct.  Such notice will be accompanied by a copy of the procedural safeguards notice.

Authority of an Impartial Hearing Officer to Remove a Student with a Disability

An impartial hearing officer may order the placement of a student with a disability to an IAES for up to 45 school days at a time if they determine that maintaining the current placement of the student is

5300

substantially likely to result in injury to the student or to others.  This authority applies whether or not the student's behavior is a manifestation of the student's disability.

Manifestation Review

A review of the relationship between a student's disability and the behavior subject to disciplinary action to determine if the conduct is a manifestation of the student's disability will be made by the manifestation team immediately, if possible, but in no case later than 10 school days after a decision is made by:

1. The Superintendent to change the placement of a student to an IAES;
2. An impartial hearing officer to place a student in an IAES; or
3. The Board, the Superintendent, or Building Principal to impose a suspension that constitutes a disciplinary change in placement.

The manifestation team must determine that the student's conduct was a manifestation of the student's disability if it concludes that the conduct in question was either:

1. Caused by or had a direct or substantial relationship to the student's disability, or
2. The direct result of the district's failure to implement the student's individualized education program.

The manifestation team must base its determination on a review all relevant information in the student's file including the student's individualized education program, any teacher observations, and any relevant information provided by the parents.

If the manifestation team determines that the student's conduct is a manifestation of the student's disability, the district will:

1. Have the committee on special education conduct a functional behavioral assessment of the student and implement a behavioral intervention plan, unless the district had already done so prior to the behavior that resulted in the disciplinary change of placement occurred.  However, if the student already has a behavioral intervention plan, the CSE will review the plan and its implementation, and modify it as necessary to address the behavior.
2. Return the student to the placement from which they were removed, unless the change in placement was to an IAES for conduct involving weapons, illegal drugs or controlled substances or the infliction of serious bodily injury, or the parents and the district agree to a change in placement as part of the modification of the behavioral intervention plan.

If the manifestation team determines that the conduct in question was the direct result of the district's failure to implement the student's individualized education program, the district will take immediate steps to remedy those deficiencies.

Services for Students with Disabilities during Periods of Suspension or Removal

Students with disabilities who are suspended or removed from their current educational setting in accordance with the provisions of this policy and applicable law and regulation will continue to receive services as follows:

1. During suspensions or removals of up to 10 school days in a school year that do not constitute a disciplinary change in placement, the district will provide alternative instruction to students with disabilities of compulsory attendance age on the same basis as non-disabled students. Students with disabilities who are not of compulsory attendance age will receive services during

5300

such periods of suspension or removal only to the same extent as non-disabled students of the same age would if similarly suspended.

2.  During subsequent suspensions or removals of up to 10 school days that in the aggregate total more than 10 school days in a school year but do not constitute a disciplinary change in placement, the district will provide students with disabilities services necessary to enable them to continue to participate in the general education curriculum and to progress toward meeting the goals set out in their respective individualized education program.  School personnel, in consultation with at least one of the student's teachers, will determine the extent to which services are needed to comply with this requirement.

    In addition, during such periods of suspension or removal the district will also provide students with disabilities services necessary for them to receive, as appropriate, a functional behavioral assessment, and behavioral intervention services and modifications designed to address the behavior violation so that it does not recur.

3.  During suspensions or removals in excess of 10 school days in a school year that constitute a disciplinary change in placement, including placement in an IAES for behavior involving weapons, illegal drugs or controlled substances, or the infliction of serious bodily injury, the district will provide students with disabilities services necessary to enable them to continue to participate in the general curriculum, to progress toward meeting the goals set out in their respective individualized education program, and to receive, as appropriate, a functional behavioral assessment, and behavioral intervention services and modifications designed to address the behavior violation so it does not recur.

In such an instance, the committee on special education will determine the appropriate services to be provided.

<u>Students Presumed to Have a Disability for Discipline Purposes</u>

The parent of a student who is facing disciplinary action but who was not identified as a student with a disability at the time of misbehaviors  has the right to invoke any of the protections set forth in this policy in accordance with applicable law and regulations, if the district is deemed to have had knowledge that the student was a student with a disability before the behavior precipitating disciplinary action occurred and the student is therefore a student presumed to have a disability for discipline purposes.

If it is claimed that the district had such knowledge, it will be the responsibility of the Superintendent, Building Principal or other authorized school official imposing the suspension or removal in question for determining whether the student is a student presumed to have a disability for discipline purposes. The district will be deemed to have had such knowledge if:

1.  The student's parent expressed concern in writing to supervisory or administrative personnel, or to a teacher of the student that the student is in need of special education.  Such expression may be oral if the parent does not know how to write or has a disability that prevents a written statement; or
2.  The student's parent has requested an evaluation of the student; or
3.  A teacher of the student or other school personnel has expressed specific concerns about a pattern of behavior demonstrated by the student, directly to the district's director of special education or other supervisory personnel.

Nonetheless, a student will not be considered a student presumed to have a disability for discipline purposes if notwithstanding the district's receipt of information supporting a claim that it had knowledge the student has a disability,

5300

1. The student's parent has not allowed an evaluation of the student; or
2. The student's parent has refused services; or
3. The District conducted an evaluation of the student and determined that the student is not a student with a disability.

If there is no basis for knowledge that the student is a student with a disability prior to taking disciplinary measures against the student, the student may be subjected to the same disciplinary measures as any other non-disabled student who engaged in comparable behaviors. However, if the district receives a request for an individual evaluation while the student is subjected to a disciplinary removal, the district will conduct an expedited evaluation of the student in accordance with applicable law and regulations. Until the expedited evaluation is completed, the student will remain in the educational placement determined by the district which can include suspension.

Expedited Due Process Hearings

The district will arrange for an expedited due process hearing upon receipt of or filing of a due process complaint notice for such a hearing by:

1. The district to obtain an order of an impartial hearing officer placing a student with a disability in an IAES where school personnel maintain that it is dangerous for the student to be in their current educational placement;
2. The district during the pendency of due process hearings where school personnel maintain that it is dangerous for the student to be in their current educational placement during such proceedings;
3. The student's parent regarding a determination that the student's behavior was not a manifestation of the student's disability; or
4. The student's parent relating to any decision regarding placement, including but not limited to any decision to place the student in an IAES.

The district will arrange for, and an impartial hearing officer will conduct, an expedited due process hearing in accordance with the procedures established in Commissioner's regulations. Those procedures include but are not limited to convening a resolution meeting and initiating and completing the hearing within the timelines specified in those regulations.

When an expedited due process hearing has been requested because of a disciplinary change in placement, a manifestation determination, or because the district believes that maintaining the student in the current placement is likely to result in injury to the student or others, the student will remain in the IAES pending the decision of the impartial hearing officer or until the expiration of the period of removal, whichever occurs first unless the student's parent and the district agree otherwise.

Referral to Law Enforcement and Judicial Authorities

Consistent with its authority under applicable law and regulations, the district will report a crime committed by a student with a disability to appropriate law enforcement and judicial authorities. In such an instance, The Superintendent will ensure that copies of the special education and disciplinary records of the student are transmitted for consideration to the appropriate authorities to whom the crime is reported, to the extent that the transmission is permitted by the Family Educational Rights and Privacy Act (FERPA).

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, June 16, 2022

5300

## XI. Corporal Punishment

Corporal punishment is any act of physical force upon a student for the purpose of punishing that student. Corporal punishment of any student by any District employee is strictly forbidden.

However, in situations where alternative procedures and methods that do not involve the use of physical force cannot reasonably be used, reasonable physical force may be used to:

1. Protect oneself, another student, teacher or any person from physical injury.
2. Protect the property of the school or others.
3. Restrain or remove a student whose behavior interferes with the orderly exercise and performance of school District functions, powers and duties, if that student has refused upon verbal command to refrain from further disruptive acts.

The District will file all complaints about the use of corporal punishment with the Commissioner of Education in accordance with Commissioner's regulations.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015

## XII. Questioning of Students and Student Searches

### Questioning of Students by School Personnel

The Board of Education is committed to ensuring an atmosphere on school property and at school functions that is safe and orderly. To achieve this kind of environment, any administrator, teacher, guidance counselor, or other professional employed by or engaged by the District may question a student about an alleged violation of law or the District Code of Conduct. Students are not entitled to any sort of "Miranda"-type warning before being questioned by school officials, nor are school officials required to contact a student's parent before questioning the student. However, school officials must tell the student why they are being questioned.

### Searches of Students by School Personnel—General Guidelines

In addition, the Board authorizes the Superintendent, Assistant Superintendent, building principals, assistant principals, other building administrators designated by the building principal, District security personnel acting under the direction and supervision of one of the aforementioned administrators, and the school nurse to conduct searches of students and their belongings except as set forth below in paragraphs A, B and C, if the authorized school official has reasonable suspicion at the inception of the search to believe that the search will result in evidence that the student violated the law or the District Code of Conduct, and the search is reasonably related in scope to the circumstances that justified the search as part of the inquiry or investigation. An authorized district administrator may, upon reasonable suspicion, search a student's vehicle that is parked on school property. Searches may be conducted, upon reasonable suspicion, during school functions off of school property, including searches of lockers at out of school locations, hotel rooms, vehicles or other facilities used by students during school sponsored trips, or athletic or academic events, in which case the staff member chaperones or coaches involved in such activity shall have the same authority to act as applies to a building principal or administrator on school property.

The term "belongings" includes briefcases, bookbags, backpacks, knapsacks, purses, wallets, and other items in which a student may be carrying material or physical evidence.

Reasonable suspicion to conduct a search of a student or a student's possessions and the scope of

5300

the particular search shall be based on the student's age, history and record in school, the prevalence and seriousness of the incident or situation to which the search is directed, and the probative value and reliability of information used as justification for the search.

An authorized school official may search a student or the student's belongings based upon information received from a reliable informant. Individuals other than District employees will be considered reliable informants if they have previously supplied information that was accurate and verified, or they make an admission against their own interest, or they provide the same information that is received independently from other sources, or they appear to be credible and the information they are communicating relates to an immediate threat to safety. District employees will be considered reliable informants unless they are known to have previously supplied information that they knew was not accurate.

Before searching a student or the student's belongings, the authorized school official should attempt to obtain an admission from the student of possession of material or physical evidence that the student violated the law or the District Code of Conduct, or to obtain voluntary consent to the search. If practicable, another professional employee of the District shall be present during the questioning preceding the search.  Searches will be limited to the extent necessary to locate the evidence sought.

An authorized school official may conduct a search of a student's belongings that is minimally intrusive, such as touching the outside of a book bag, without reasonable suspicion, so long as the school official has a legitimate reason for the search.

Whenever practicable, searches will be conducted in the privacy of administrative offices or the nurse's office in the presence of another professional employee of the District. The student will be present when their possessions are being searched.

### A. Student Lockers, Desks and Other School Storage Places

The rules in this Code of Conduct regarding searches of students and their belongings do not apply to student lockers, desks and other school storage places. Students have no reasonable expectation of privacy with respect to these places and school officials retain complete control over them. This means that student lockers, desks and other school storage places may be subject to search at any time by school personnel, without prior notice to students and without their consent.

### B. Searches of a Student's Person

1. Searches of a student's person includes any search that involves physical contact with a student's body, including clothing worn by the student, or the requirement that a student remove clothing, with the exception of outer garments such as hats, coats, jackets, sweatshirts, sweaters, vests, and gloves.  A student may be directed to remove any outer garment, and may be directed to remove their shoes and socks and to turn out or empty their pockets in any outer garment or pants or shirts.  These searches also include, but are not limited to, pat-down searches and the sniffing of a student by a police search dog.

2. A strip search is a search that requires a student to remove any or all of their clothing, other than outer garments, shoes, and socks. If an authorized school official believes it is necessary to conduct a strip search of a student, the school official may do so only if the search is authorized in advance by the Superintendent. The only exception to this rule requiring advanced authorization is when the school official believes there is an emergency situation that could threaten the safety of the student or others.

   Strip searches may only be conducted by an authorized school official of the same sex as

5300

the student being searched and in the presence of another District professional employee who is also of the same sex as the student.

In every case, the school official conducting a strip search must have probable cause - not simply reasonable cause - to believe the student is concealing evidence of a violation of law or the District Code of Conduct. In addition, before conducting a strip search, the school official must consider the nature of the alleged violation, the student's age, the student's record and the need for such a search.

School officials will attempt to notify the student's parent by telephone before conducting a strip search, or in writing after the fact if the parent could not be reached by telephone. The student's consent to the strip search shall be sought prior to conducting the search.

## C.  Treatment of Cellphones

Teachers and administrators are authorized to confiscate student cell phones that are being used in violation of the District Code of Conduct and/or in violation of a policy of the District or any school regarding the use of cellphones in the school.  Further, teachers and administrators are authorized to confiscate a student's cellphone as part of an investigation of a violation of law or the District's Code of Conduct.  Teachers and administrators are permitted to look at the screen of the cell phone and can request the student's cooperation to search the cell phone further.  Without a student's permission, teachers and administrators should not undertake a more extensive search of the contents of the cellphone until conferring with the Superintendent or school attorney for guidance or unless the teacher or administrator has reasonable cause to believe there exists an imminent threat of harm to persons or property.

## D. Documentation of Searches

The authorized school official conducting the search shall be responsible for promptly recording the following information about each search:

1. Name, age and grade of student searched.
2. Reasons for the search.
3. Name of any informant(s).
4. Purpose of search (that is, what item(s) were being sought).
5. Type and scope of search.
6. Person conducting search and their title and position.
7. Witnesses, if any, to the search.
8. Time and location of search.
9. Results of search (that is, what items(s) were found).
10. Disposition of items found.
11. Time, manner and results of parental notification.

The building principal or the principal's designee shall be responsible for the custody, control and disposition of any illegal or dangerous item taken from a student. The principal or their designee shall clearly label each item taken from the student and retain control of the item(s), until the items is turned over to the police. The principal or their designee shall be responsible for personally delivering dangerous or illegal items to police authorities.

## E. Police Involvement in Searches and Interrogations of Students

District officials are committed to cooperating with police officials and other law enforcement authorities to maintain a safe school environment. Law enforcement officials may be summoned in order to conduct an investigation of alleged criminal conduct on school property, or during a school sponsored activity, or to maintain the educational environment. They may also be summoned for the purpose of maintaining or restoring order when the presence of such officers is necessary to prevent injury to persons or property. Police officials, however, have limited authority to interview or search students in schools or at school functions, or to use school facilities in connection with police work. Police officials may enter school property or a school function to question or search a student or to conduct a formal investigation involving students only if they have:

1. A search or an arrest warrant; or
2. Probable cause to believe a crime has been committed on school property or at a school function.

If police are involved in the questioning of students on school property or at a school function occurring off school property, whether or not at the request of school authorities, it will be in accordance with applicable law and due process rights afforded students. Generally, police authorities may only interview students on school property or at a school function without the permission of the parent in situations where a warrant has been issued for the student's arrest (or removal). Police authorities may also question students for general investigations, general questions regarding crimes committed on school property. If a student is to be questioned by police on school property or at a school function, it is the responsibility of the school administration to see that the interrogation takes place privately, in the presence of an administrator and in the presence of a parent, except when a parent gives verbal consent to the school administration for the interrogation to take place in the absence of the parent or when a warrant has been issued for the student's arrest. In all other situations, unless an immediate health or safety risk exists, if the police wish to speak to a student without a warrant they should take the matter up directly with the student's parent.

Students who are questioned by police officials on school property or at a school function will be afforded the same rights they have outside the school. This means:

1. They must be informed of their legal rights.
2. They may remain silent if they so desire.
3. They may request the presence of an attorney

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, August 22, 2016, June 16, 2022

## XIII. Visitors to the Schools

The Board recognizes that the success of the school program depends, in part on support by the larger community. The Board wishes to foster a positive climate where members of the community have the opportunity to observe the hard work and accomplishments of students, teachers, and other staff. However, since schools are a place of work and learning, however, certain limits must be set for such visits. The building principal or their designee is responsible for all persons in the building and on the grounds. For these reasons, the following rules apply to visitors to the schools:

1. Anyone who is not a regular staff member or student of the school will be considered a visitor.
2. All visitors to the school must enter through the designated single point of entry for the school building upon arrival at the school. There they will be required to sign the visitor's register, will be

5300

issued a visitor's identification badge, which must be worn in a visible manner at all times while in the school or on school grounds. The visitor will be directed by a member of the staff to report to the appropriate location. The visitor must return the identification badge to the staff member at the reception area and sign out before leaving the building.

3. Visitors attending school functions that are open to the public, or which are outside school hours, are not required to register. Visitors attending a function held in a school building, outside of school hours, that is sponsored by an outside community group or organization, in accordance with the Boards policy on Public Use of School Facilities (Policy 1500) are not required to register.

4. Parents or citizens who wish to observe a classroom or school activity while school is in session are required to arrange such visits in advance with the classroom teacher(s) and/or Building Principal, so that class disruption is kept to a minimum.

5. Visitors shall not take class time to discuss individual matters with instructional personnel.

6. Any unauthorized person on school property will be reported to the principal or their designee. Unauthorized persons will be asked to leave. The police may be called if the situation warrants.

7. All visitors are expected to abide by the rules for public conduct on school property contained in this code of conduct.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, June 16, 2022

## XIV. Public Conduct on School Property

The District is committed to providing an orderly, respectful environment that is conducive to learning. To create and maintain this kind of an environment, it is necessary to regulate public conduct on school property and at school functions. For purposes of this section of the code, "public" shall mean all persons when on school property or attending a school function including students, teachers and District personnel, parents, visitors and other licensees and invitees.

The restrictions on public conduct on school property and at school functions contained in this code are not intended to limit freedom of speech or peaceful assembly. The District recognizes that free inquiry and free expression are indispensable to the objectives of the District. The purpose of this code is to maintain public order and prevent abuse of the rights of others.

All persons on school property or attending a school function shall conduct themselves in a respectful and orderly manner. In addition, all persons on school property or attending a school function are expected to be properly attired for the purpose they are on school property.

### A. Prohibited Conduct

No person, either alone or with others, shall:

1. Intentionally or willfully injure any person or threaten to do so.

2. Physically detain or restrain another person.

3. Intentionally or willfully damage or destroy school District property or the personal property of a teacher, administrator, other District employee or any person lawfully on school property, including graffiti or arson.

4. Disrupt the orderly conduct of classes, school programs or other school activities, including entering onto the field of play or into the area of such class, school program or other school activity before, during, or after such class, school program or other school

activity without the consent of a District official.

5. Use language or gestures that are obscene, are abusive, advocate illegal action, or are disruptive to the class, school program, or other school activity, including but not limited to harassing or abusive comments to participants, staff members, coaches, officials, and/or other attendees.

6. Distribute or wear materials on school grounds or at school functions that are obscene, advocate illegal action, appear libelous, or are disruptive to the class, school program, or other school activity.

7. Distribute or post any written material, pamphlets or posters without prior written approval of the Superintendent or their designee.

8. Intimidate, harass or discriminate against any person on the basis of actual or perceived race (including traits historically associated with race, such as hair texture and protective hairstyles like braids, locs, and twists), color, creed, national origin, ethnic origin, religion, religious practice, age, sex, gender (including gender identity and expression), sexual orientation, weight or disability.

9. Enter any portion of school grounds or the school premises without legitimate school business to conduct and/or without expressed advance administrative authorization, or remain in any building or facility after it is normally closed, or refuse to leave any building or facility after being required to do so by an authorized administrator or staff member.

10. Obstruct the free movement of any person in any place to which this code applies.

11. Violate the traffic laws, parking regulations or other restrictions on vehicles.

12. Allow pets to defecate on school grounds without cleaning up after them.

13. Possess, consume, sell, share, offer, manufacture, distribute or exchange alcoholic beverages, and/or other controlled substances (including prescription drugs) or any other substance used for the purpose of altering an individual's physical or mental state, or be under the influence on school property or at a school function.

14. Smoke a cigarette, cigar, or pipe, or use an electronic cigarette (e-cigarette) or similar device including but not limited to e-hookahs, hookah pens and vape pens, or use any chewing or smokeless tobacco, or smoking/vaping/ingesting/consuming cannabis or concentrated cannabis (includes cannabis products) or smoking cannabinoid hemp or selling, offering, manufacturing, distributing or exchanging cannabis, concentrated cannabis or cannabinoid hemp (except for lawful medical cannabis use prescribed by a medical care provider in compliance with state law and regulation and district policy on administration of medication on school premises or while engaged in school activities).

15. Possess or use weapons in or on school property or at a school function, except in the case of law enforcement officers or except as specifically authorized by the school District.

16. Use any recording, broadcasting, and/or playback equipment or materials, including but not limited to video recorders, cameras, cell phone cameras, tape recorders, or videophones, in school, on school grounds, and/or at school events without prior teacher or administrator approval, except at school functions that are open to the public, unless otherwise prohibited,

17. Loiter on or about school property.

18. Gamble on school property or at school functions.

19. Refuse to comply with any reasonable order of identifiable school District officials performing their duties.

20. Willfully incite others to commit any of the acts prohibited by this code.

21. Violate any federal or state statute, local ordinance or Board policy while on school property or while at a school function.

5300

## B. Penalties

Persons who violate this code shall be subject to the following penalties:

1. Visitors' authorization, if any, to remain on school grounds or at the school function shall be withdrawn and they shall be directed to leave the premises. If they refuse to leave, they shall be subject to ejection. The District shall have the authority, consistent with law and Board policy, to prohibit the visitor from attending future school functions.
2. Students shall be subject to disciplinary action as the facts may warrant, in accordance with the due process requirements.
3. Tenured faculty members shall be subject to disciplinary action as the facts may warrant in accordance with Education Law §3020-a or any other legal rights that they may have.
4. Staff members in the classified service of the civil service entitled to the protection of Civil Service Law §75 shall be subject to immediate ejection and to disciplinary action as the facts may warrant in accordance with Civil Service Law §75 or any other legal rights that they may have.
5. Staff members other than those described in subdivisions 3 and 4 shall be subject to warning, reprimand, suspension or dismissal as the facts may warrant in accordance with any legal rights they may have.

## C. Enforcement

The building administrator or their designee shall be responsible for enforcing the conduct required by this code.

When the building administrator or their designee sees an individual engaged in actions not conducive to achieving the goal of making school a community free of violence intimidation, bullying, harassment, and discrimination, misconduct or otherwise not allowed behaviors, which in their judgment does not pose any immediate threat of injury to persons or property, the principal or their designee shall tell the individual that the conduct is prohibited and attempt to persuade the individual to stop. The principal or their designee shall also warn the individual of the consequences for failing to stop. If the person refuses to stop engaging in the prohibited conduct, or if the person's conduct poses an immediate threat of injury to persons or property, the principal or their designee shall have the individual removed immediately from school property or the school function. If necessary, local law enforcement authorities will be contacted to assist in removing the person.

The District shall initiate disciplinary action against any student or staff member, as appropriate, with the "Penalties" section above. In addition, the District reserves its right to pursue a civil or criminal legal action against any person violating the code.

Adoption date: August 2, 2012

Revised: July 8, 2014, August 6, 2015, June 13, 2019, June 16, 2022

**Croton-Harmon Schools**

5300